IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORI WADE, )
)
Plaintiff, )
vs. )
) Civil Action No. 02 C 3205
EQUIFAX CREDIT INFORMATION SERVICES, ) Judge Manning
) Magistrate Judge Schenkier
I.C. SYSTEM, INC., )
)
FINGERHUT CREDIT ADVANTAGE, )
)
Defendants. )

**RECEIVED AUG - 8 2003** 
**FILED AUG 0 8 2003** 
**DOCKETED AUG 1 2 2003**

### PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, LORI WADE, by and through her attorneys, KROHN & MOSS, LTD., and in response to the Motion for Summary Judgment filed by the Defendant, I.C. SYSTEM, INC., states as follows:

### INTRODUCTION

Plaintiff, LORI WADE, filed her Amended Complaint against EQUIFAX CREDIT INFORMATION SERVICES, I.C. SYSTEM, INC. FINGERUT CREDIT ADVANTAGE and VERIZON WIRELESS in August of 2002 based on violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended.* I.C. SYSTEM, INC., filed a Motion for Summary Judgment as to Plaintiff's Complaint. This memorandum of law is in response to Defendant I.C. SYSTEM, INC.'s Motion.

7

## I. FACTUAL BACKGROUND

Shortly before December 4, 2001, Lori Wade ("Wade") ordered a copy of her Equifax Credit Information Services ("Equifax") consumer disclosure and received a copy by mail. See Exhibit A. At that time, Wade discovered that several inaccurate and derogatory items were appearing on her credit report that did not belong to her. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. 1681i, Wade sent a letter, disputing the inaccurate information appearing on her credit file to Equifax and requesting an investigation. Wade's dispute to Equifax stated that two collection accounts, one with I.C. System, Inc. and one with Collectech, both collecting on behalf of Verizon Wireless, and a delinquent account with Fingerhut were appearing on her credit file, both of which she had never had an account with. On February 6, 2002, Plaintiff received a response from Equifax by way of revised disclosure stating, in relevant part, that Equifax had verified that the I.C. System, Inc. account belonged to Plaintiff. See Exhibit B. Wade, dissatisfied with the response, wrote a second dispute letter to Equifax in April of 2002, requesting a reinvestigation into Plaintiff's dispute. On May 9, 2002, Plaintiff received a response from Equifax stating that Equifax had contacted each source directly and their investigation was complete. See Exhibit D. Based on the information provided in Plaintiff's May 9, 2002 credit file, I.C. System, Inc. again verified the account as accurately belonging to Wade. See Exhibit D.

On May 3, 2002, Lori Wade filed a Complaint against Equifax Credit Information Services, I.C. System, Inc., and Fingerhut Credit Advantage in the United States District Court for the Northern District of Illinois. In Plaintiff's Complaint, Lori Wade states that the Defendants, despite Plaintiff's exhaustive efforts, have,

> **.......nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, have failed to remove the inaccurate information, have failed to note the disputed status of the inaccurate information**

**and have continued to report the derogatory inaccurate information about the plaintiff.**

See Exhibit G at ¶16. This case represents a clear and willful violation of the Fair Credit Reporting act as I.C. System, Inc., failed to perform a reasonable investigation of any sort. Plaintiff disputed with Equifax on two separate occasions however, Plaintiff's attempts were to no avail, as an account which did not belong to Ms. Wade remained on her credit file with one of the three major credit data repositories.

## II. STANDARD OF REVIEW

Summary judgment, as Defendant points out, is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, 477 US 242, 247, 106 S.Ct. 2505, 2510 (1986).

The Court has noted, however, that trial courts should act with caution in granting summary judgment and that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970); Harriston v. Chicago Tribune Co., 992 F.2d 697, 704 (7th Cir.1993). Finally, any doubt as to the existence of a genuine issue for trial should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. at 158-159, 90 S.Ct. at 1608-09, 26 L.Ed.2d 142 (1970).

If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion. Celotex v. Catrett, 477 US 317, 106 S.Ct. 2548 (1986).

## III. ARGUMENT

### A. BACKGROUND OF THE FCRA

The Fair Credit Reporting Act, (hereinafter "FCRA") was enacted in 1970. The FCRA was the product of congressional concern over abuses in the credit reporting industry. St. Paul Guardian Insurance Co. v. Johnson, 884 F.2d 881, 883 (5th Cir.1989). It was prefaced with a congressional finding that "inaccurate credit reports directly impair the efficiency of the banking system", and "unfair credit methods undermine the public confidence which is essential to the continued functioning of the banking system." Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir 2002), 15 U.S.C. § 1681(a)(1).

The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, Kates v. Croker National Bank, 776 F.2d 1396, 1397 (9th Cir.1985); see also St. Paul, 884 F.2d at 883 (citing Pinner v. Schmidt, 805 F.2d 1258, 1261 (5th Cir.1986), cert. denied, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987), and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. St. Paul, 884 F.2d at 883 (citing Hovater v. Equifax. Inc., 823 F.2d 413, 417 (11th Cir.), cert. denied, 484 U.S. 977, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987)). In other words, a general purpose of the FCRA is to protect the creditworthiness and reputation of every consumer. Ackerley v. Credit Bureau of Sheridan, Inc., 385 F.Supp. 658

(D.Wyo.1974). These consumer oriented objectives support a liberal construction of the FCRA. Kates, 776 F.2d at 1397.

The Act mandates that covered institutions adopt reasonable procedures to ensure the maximum possible accuracy of a consumer's credit file and places limits on to whom and for what purpose a credit reporting agency may disclose a consumer's private credit information. If a credit reporting agency fails in its duties under the FCRA, the Act allows a consumer to protect his or her rights by filing a lawsuit in federal court.

For the reasons outlined below, Plaintiff respectfully requests that this honorable Court deny Defendant's Motion for Summary Judgment.

### B. FURNISHERS OF INFORMATION ARE LIABLE UNDER THE FCRA

Case law has defined a furnisher as "an entity 'which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, CCA, and Trans Union.' " DiMezza v. First USA Bank Inc., 103 F.Supp.2d 1296, 1299 (D.N.M.2000)(quoting Carney, 57 F.Supp.2d at 501).

The duties imposed on furnishers of information are found in subsections 1682l s-2(a) and 1682l s-2(b). The first, § 1682l s-2(a), requires furnishers of information to provide accurate information to consumer reporting agencies; § 1682l s-2(b), on the other hand, imposes a duty to conduct investigation and promptly report any inaccurate or incomplete information to consumer reporting agencies, upon notice of a dispute by a consumer. Sections 1681n(c) and 1681o(b) were amended to provide for a private right or action for the consumer against "any person," including furnishers of information, for any willful noncompliance or negligent noncompliance with the FCRA.

"Prior to these amendments the law contained a loophole which allowed reporting

11

agencies to blame furnishers of inaccurate credit reports and no disincentive for furnishers to update their reported data. Furnishers may not have been responsive to consumers, but there was nothing consumers could do about it, furnishers were not liable to consumers for failing to report accurately. Congress rectified this problem with section 1681s-2(a) and (b), which together require furnishers to provide accurate information and properly investigate disputed reports." Vasquez-Garcia v. Trans Union de Puerto Rico, 222 F.Supp.2d 150, 158 (D. Puerto Rico 2002), quoting John Roddy, "The Crossroads of Privacy and Credit: Class Liability Under the FCRA and FDCPA," Corporate Law and Practice Course Handbook Series, Practicing Law Institute, PLI Order No. B0-00ZV, p. 847 (April 2001).

When a consumer disputes a debt, the furnisher must reinvestigate the validity of the debt and report the results of that investigation to the applicable credit reporting agencies. 15 U.S.C. § 1681s-2(b). If the investigation shows the reported information is inaccurate or incomplete, the furnisher must provide corrected information to the credit reporting agency, and must complete these tasks within the prescribed time limit, 30 days. 15 U.S.C. § 1681s-2(b)(2). The furnisher's failure to comply with these requirements subjects it to liability for statutory and actual damages, as well as the prevailing consumer's costs and attorney's fees. 15 U.S.C. § 1681o. The amended liability sections of the FCRA, thus, provide for liability based on willful or negligent noncompliance with the statute. §1681n(a); §1681o(a).

As the Vasquez-Garcia court recognized, the FCRA establishes a procedure which requires that the consumer dispute the report directly to the reporting agency. 15 U.S.C. § 1681i. Then the reporting agency notifies the furnisher of information about the dispute. See § 1681s-2(b). The FCRA then holds both the consumer reporting agency and the furnisher of information of credit responsible for investigating a disputed item

and for reporting only accurate information, so as to protect a consumer's credit report. Vasquez-Garcia v. Trans Union de Puerto Rico, 222 F.Supp.2d 150, 158 (D. Puerto Rico 2002).

The court in Gordon v. Greenpoint Credit, 2003 WL 21360105 *3 (S.D. Iowa 2003) noted:

> "inaccuracies come not only from credit reporting agencies, but also from the institutions that furnish information to the reporters. To the individual consumer who is denied credit because of inaccurate information on his or her credit report, the source of the error is of little matter. As noted, the FCRA mandates that credit reporting agencies follow reasonable procedures to ensure the maximum possible accuracy in the consumer's credit report. §1681e (b). The three main credit reporting agencies, Equifax, Experian, and Transunion, receive and report credit information from countless sources regarding an even greater number of consumers. Asking these institutions to independently investigate and verify all furnished information is not reasonable. The FCRA, therefore, imparts the duty to provide accurate information with the furnishers of information.
> § 1681s-2 (a)."

Further, the FCRA imparts a second duty on furnishers of information, the duty to investigate disputed information once notified of the dispute by the credit reporting agency. § 1681s-2 (b). Id. at 4. The FCRA also mandates that the credit reporting agencies are to be an integral part of this investigation process. Id.

A consumer who is dissatisfied with the results-or lack thereof-of the investigation undertaken by a furnisher of information may, therefore, protect his or her rights by filing a private cause of action against the furnisher of information in federal court. Id.

Section 1681n provides: "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that

consumer in an amount equal to the sum of any actual damages sustained by the consumer ... or damages of not less than $100 or more than $1,000" plus reasonable attorney's fees. In similar terms, § 1681o establishes comparable liability for negligent non-compliance. That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement "imposed with respect to any consumer." Id.

The court in Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir 2002) is the first circuit to directly address the issue of the liability of furnishers of credit reporting information.

> In discussing subsection 1681s-2(b), the court in Nelson provided this analysis:
> "This section specifies what happens after a CRA receives notice "pursuant to section 1681i(a)(2) ... of a dispute with regard to the completeness or accuracy of information provided by a person" to the CRA. The person, i.e., the furnisher of the disputed information, has four duties: to conduct an investigation with respect to the disputed information; to review all relevant information provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results "to all [nationwide] consumer reporting agencies to which the person furnished the information."" Id.

The Nelson court examined the 1996 amendments to the FCRA, specifically §§ 1681n & o. Previously, those sections provided for suit against a consumer reporting agency or against a user of credit information, but not against a furnisher. When the statute was amended, "any person" was made open to suit. See Pub.L. 104- 208 at § 2412 (1996) ("section 616 of the [FCRA] ... is amended by striking 'Any consumer reporting agency or user of information which' and inserting '(a) IN GENERAL, any person who' ."

"[Congress']purpose (in enacting the FCRA amendments), to provide some private remedy to injured consumers, coheres with what we see as a primary purpose for the FCRA, to protect consumers against inaccurate and incomplete credit reporting. The statute has been drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information. It is not for a court to remake the balance struck by Congress, or to introduce limitations on an express right of action where no limitation has been written by the legislature." Nelson v. Chase Manhattan Mortgage Corp. 282 F.3d 1057 (9th Cir 2002). As a result of its analysis, Nelson, the first circuit to examine this issue, held that furnishers of information under the FCRA could be civilly liable for violations. Id.

Defendant, I.C. System, as a furnisher of information to credit reporting agencies such as Defendant ECIS, clearly has responsibilities under the FCRA. In the instant case, Defendant I.C. System did not fulfill those responsibilities, and as such, has violated the FCRA and is liable to Plaintiff as a result.

### C. A FURNISHER HAS A DUTY TO CONDUCT A REASONABLE INVESTIGATION

In Bruce v. First USA Bank, National Association, et. al., 103 F.Supp.2d 1135(E.D. Mo. 2000), a consumer brought an action against a credit card issuer, alleging that it violated the Fair Credit Reporting Act (FCRA) when it failed to properly investigate his claim that his former wife had fraudulently opened two accounts in his name and when it reported those accounts as delinquent. The credit card issuer moved for summary judgment. The District Court held that: the reasonableness standard applied in cases addressing credit reporting agencies' reinvestigation of consumers' disputes regarding information contained in credit reports also applies in analyzing claims that furnishers of credit information failed to properly investigate disputed information, and

15

that genuine issues of material fact existed as to whether credit card issuer negligently failed to comply with FCRA's investigation requirement, as to whether credit card issuer willfully failed to comply with FCRA's investigation requirement, and as to whether consumer incurred damages as a result of credit card issuer's alleged failure to conduct an appropriate investigation.

In Bruce, the Plaintiff claimed that Defendant violated the FCRA when it failed to conduct an appropriate investigation into his claim that his former wife had fraudulently opened two credit card accounts in his name, and when it reported those accounts as delinquent despite his claims of fraud. Id. at 1139. The Defendant conducted an investigation of plaintiff's allegations, which consisted of a "standard procedure," whereby it reviewed the history of the accounts, including payment history, unusual activity on the accounts, previous disputes, review of the credit card applications and a comparison of signatures. The investigation revealed that statements for both accounts had been sent to plaintiff's address and in his name for two years, payments had been timely made during that period, there were no "non-customary" charges on the accounts, and when the first of the two accounts was opened there was a balance transfer of $2,233.49 from a Commerce Bank credit card that plaintiff held jointly with Paula Bruce. Id.

The Bruce Defendant's investigation erroneously revealed that there were no previous disputes regarding charges on the accounts; however, the record indicated that Paula Bruce had disputed a charge for $127.50 in March of 1995. The investigation also revealed that the signatures on the credit card applications did not match plaintiff's signature on his driver's license. No one from the company's investigation unit spoke with plaintiff or his ex-wife about the accounts. In spite of this, the furnisher responded to the credit bureau that no fraud had been committed and that plaintiff was responsible

16

for the accounts. Id.

In its analysis, the Bruce court noted that under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, if a consumer notifies a consumer reporting agency of a dispute regarding the completeness or accuracy of information contained in the consumer's credit report, the agency is required to reinvestigate the disputed information. 15 U.S.C. § 1681i(a). As part of its reinvestigation, the agency must notify the furnisher of the credit information of the dispute. 15 U.S.C. § 1681i(a)(2). Upon notice of a dispute from a credit reporting agency, § 1681s-2(b)(1) of the FCRA requires the furnisher of the information to conduct an investigation regarding the dispute and to report its findings accordingly.

The Bruce court indicated, the FCRA does not provide any indication as to the level of investigation required under § 1681s-2(b)(1). The court, however, found Section 1681s-2(b)'s investigation requirement for furnishers of credit information analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report.

Factors to be considered in determining whether a credit reporting agency has conducted a reasonable investigation include: (1) whether the consumer has alerted the agency that the initial source of the information may be unreliable or if the agency knows or should know that the source is unreliable, and (2) the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information. Cushman, 115 F.3d at 225; Henson, 29 F.3d at 287. Whether a reasonable investigation has been conducted is generally a question of fact for the jury. Id.

The court in Bruce, using the reasonable reinvestigation standard, stated: "I believe that genuine issues of material fact exist as to whether the Defendant negligently failed to comply with § 1681s-2(b)(1)(A)'s investigation requirement. There is a

17

definite factual dispute as to whether the information reported by the defendant against plaintiff was accurate. Defendant's investigation consisted solely of a review of its own internal records. Id. at 1144. The judge in Bruce therefore found "***that a rational jury considering this evidence could conclude that First U.S.A. negligently failed to take reasonable steps to verify the accuracy of the information that it reported to the agencies. Summary judgment is therefore inappropriate on plaintiff's claim of negligent violation of the FCRA." Id.

Similarly, in Plaintiff's case, a credit reporting agency, the former Co-Defendant ECIS, notified Defendant I.C. System of plaintiff's dispute regarding the Verizon account. Plaintiff repeatedly insisted through telephone and written means that the Verizon account was not hers and that someone was using her identity. I.C. System admits that its only investigation consisted of a review of its own internal documents. I.C. System, during that investigation, noted that the name on the Verizon account (Lori White) did not match the name of the person who appeared on the CDV sent by ECIS (Lori Wade). Nonetheless, they did nothing further to investigate, nor did they call Plaintiff—they merely sent the form back to ECIS, verifying that the account belonged to "Lori White", but in no way indicated that the account should be removed from Plaintiff's credit file.

Therefore, as in Bruce, there are genuine issues of material fact as to whether the investigation conducted by Defendant I.C. System was indeed reasonable, and its Motion for Summary Judgment must be denied.

In another case, Betts v. Equifax Credit Information Services, Inc. 245 F.Supp.2d 1130 (W.D. Wash. 2003), both parties moved for summary judgment with respect to whether the furnisher failed to comply with its Fair Credit Reporting Act ("FCRA") obligations. In that case, as here, the Plaintiffs' claim under the FCRA stemmed from the

duties of furnishers of information in connection with credit reporting agencies. In that case, the Plaintiff notified Equifax she was disputing a debt on February, 13, 2001. On March 6, 2001, Topco received a CDV from Equifax. Topco updated her address and confirmed the debt's existence. Betts again disputed the debt, and on March 20 another CDV was sent by Equifax. This time, the furnisher increased the debt amount and confirmed its existence. Id. at 1135.

Defendants argued that after receiving confirmation of a Department of Licensing vehicle seller's report, and noting the report's filing and contents, that they had no further duty to investigate. Defendants cited Henson v. CSC Credit Servs., 29 F.3d 280 (7th Cir.1994) for this position.

The Betts court, in determining that genuine issues of material fact existed with respect to whether Topco had conducted a reasonable investigation, stated "Defendants proffer no rationale why this standard should not apply equally to furnishers of information. The statute requires that furnishers of information "shall" conduct an investigation. Although defendants contend that verification of such a debt is an "almost impossible task," this conclusory statement is insufficient. Whether or not this Court adopts the balancing test in Henson urged by defendants, a genuine issue of material fact exists with respect to whether Topco conducted any investigation, and if so, whether that investigation was reasonable." Id.

Similarly, in the instant case, Defendant I.C. System had been notified by ECIS of the inaccurate information in Plaintiff's credit report. That put them in position to conduct a more thorough investigation than the one they did conduct. Instead, they merely verified the inaccurate information, ignored the file until they were contacted again five months later, and did nothing else. At no time did they inform Equifax that Equifax was reporting the complainant incorrectly. Therefore, a genuine issue of

material fact exists with respect to whether Defendant conducted a reasonable investigation, and its motion for summary judgment must be denied.

### D. THE QUESTION OF PLAINTIFF'S DAMAGES SHOULD GO TO THE JURY

Section 1681o of the FCRA provides consumers with a cause of action for negligent noncompliance with § 1681s-2(b), permitting the recovery of actual damages, costs and attorney's fees. Campbell v. Baldwin, 90 F.Supp.2d 754, 756 (E.D.Tex.2000)(consumers have private causes of action against furnishers of credit information who violate § 1681s-2(b)). Likewise, § 1681n provides a cause of action for willful violations, entitling a consumer to recover punitive damages in addition to the damages available for negligent noncompliance. Campbell, 90 F.Supp.2d at 756.

As Defendant points out, proof of damage is an essential element of a FCRA claim. Pettus v. TRW Consumer Credit Services and CSC, 879 F.Supp. 695, 698 (W.D. Tex. 1994). However, Defendant is incorrect in its assertion that Plaintiff can prove no damages as a result of its negligent and willful noncompliance with the FCRA.

In Guimond v. Trans Union Credit Information Co., (9th Cir. 1995), a consumer brought action under the Fair Credit Reporting Act (FCRA) and under state law to recover damages for credit reporting agency's failure to correct inaccurate information in consumer credit report and failure to disclose source of inaccurate information. On appeal from summary judgment for the CRA, the 9th Circuit held that a denial of credit was not prerequisite to recovery of damages under the FCRA for agency's alleged failure to follow reasonable procedures to ensure maximum possible accuracy of information reported

In analyzing Plaintiff's claims, the court in Guimond found the term "actual damages" has been interpreted to include recovery for emotional distress and humiliation.

*See* Johnson v. Department of Treasury, I.R.S., 700 F.2d 971, 984 (5th Cir.1983) (mental anguish included as an element of recovery in FCRA claims); Thompson v. San Antonio Retail Merchants Ass'n, 682 F.2d 509, 514 (5th Cir.1982); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir.1976); Bryant v. TRW, Inc., 487 F.Supp. 1234, 1240 (E.D.Mich.1980), aff'd, 689 F.2d 72 (6th Cir.1982); Jones v. Credit Bureau of Huntington, Inc., 184 W.Va. 112, 117, 399 S.E.2d 694 (1990).

In Guimond, the 9th Circuit court held that the district court erred in granting summary judgment because Trans Union did not contest plaintiff's claims of damages, nor that those damages were a result of the inaccuracies in her credit report. The court also found absent some authority stating that a denial of credit, and not mere credit inaccuracies, are necessary for recovery under FCRA, the issue of causation should have been left for a fact finder to determine. Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333-34 (9th Cir.1995).

Plaintiff in this case has suffered actual damages such as expenses incurred in disputing the inaccurate information. She has also suffered great emotional distress as a result of having her identity stolen and false and misleading information disseminated about her and her creditworthiness. See Exhibit I. It is clear that damages for emotional distress and loss of reputation are recoverable under the FCRA. See Cousin v. Trans Union Corp., 246 F.3d 359, 369 n. 15 (5th Cir.2001); Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998); Guimond, 45 F.3d at 1333; Zamora v. Valley Fed. Savs. & Loan Ass'n, 811 F.2d 1368, 1371 (10th Cir.1987).

In Bruce v. First USA Bank, National Association, et. al., 103 F.Supp.2d 1135 (E.D. Mo. 2000) the court held that plaintiff had presented evidence sufficient to create a material dispute regarding whether he incurred damages as a result of First USA's alleged failure to conduct an appropriate investigation. Id. The court further held that

21

plaintiff Bruce had presented sufficient evidence of emotional distress damages to withstand summary judgment. Bruce, 103 F.Supp.2d, citing Bakker, 152 F.3d at 1013 (economic damages or "out-of-pocket" expenses not a prerequisite to award of damages under the FCRA; awarding actual damages based on mere claims of emotional distress); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir.1976)(awarding actual damages under the FCRA based on claims of emotional distress only); Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1332-33 (9th Cir.1995)(same); Stevenson v. TRW Inc., 987 F.2d 288, 296-97 (5th Cir.1993) (emotional distress damages may include damages for embarrassment, humiliation and mental anguish).

Therefore, Plaintiff's claims for damages as a result of Defendant's negligent noncompliance should go to the jury and its motion for summary judgment should be denied.

Under the most stringent approach to determining whether a plaintiff can present a claim under §1681e(b), the plaintiff must minimally present some evidence from which a trier of fact can infer that the credit reporting agency failed to follow reasonable procedures to ensure maximum accuracy in producing a credit report. *Scheffer v. Experian*, 02-7404, (Eastern District of Pennsylvania, Decided July 24, 2003).
In *Scheffer*, the a credit reporting agency came under fire for preparing a credit report which listed the plaintiff as deceased on an account with Sears. The court found that the fact that the account opened before the plaintiff was born and the fact that it was only one of twelve active accounts that show a deceased person were indicative that there remained a question of fact as to whether the procedures utilized in generating that report were at all reasonable. *Scheffer*, Slip Op. at pp. 5-6.
In this case, there is no record that Plaintiff ever had any delinquency on this account until September of 1999. In fact, their report of July 19, 2002 (Exhibit 4 of Defendant's

Motion) shows that there are absolutely no other historic dates on this file other than September 1999. The same report shows that this was an installment account that lasted ten (10) months, and has a monthly payment of zero. There is a notation that the matter was put into collections in September 1999, but no indication that there was any delinquency on this account prior to that. In any collection matter, it is only common sense that the account become delinquent first. With no history to this account but a spontaneous collection, there remains a question of fact as to whether Experian followed all reasonable procedures to assure maximum accuracy in reporting.

### E. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

Finally, Plaintiff has made a case for willful noncompliance, and this question should go to the jury as well. To be entitled to punitive damages pursuant to 15 U.S.C. § 1681n, plaintiff must show Defendant's noncompliance with § 1681i(a) was willful. "To show willful noncompliance with the FCRA, plaintiff must show that Defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.' " Philbin, 101 F.3d at 970(quoting Pinner, 805 F.2d at 1263).

The Fifth Circuit has held that "[o]nly defendants who have engaged in 'willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." Stevenson, 987 F.2d at 294 (quoting Pinner, 805 F.2d at 1263). Other courts have allowed punitive damages in cases involving concealments or misrepresentations without necessarily limiting the availability of punitive damages to such cases. See, e.g., Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834 (8th Cir.1976); Collins v. Retail Credit Co., 410 F.Supp. 924, 931-32 (E.D.Mich.1976).

In Plaintiff's case, Defendant certainly "knowingly and intentionally committed an act in conscious disregard for the rights of others" when it allowed five months to lapse between receiving Plaintiff's initial dispute on the Verizon account and finally removing that account due to fraud. This is undoubtedly a question for the jury, and as such summary judgment is inappropriate and should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this honorable court deny Defendant's Motion for Summary Judgment.

Respectfully Submitted,
**LORI WADE**

By: _____
Attorney for Plaintiff

Larry P. Smith
Krohn & Moss, Ltd.
120 West Madison Street
10th Floor
Chicago, Illinois 60602
Ph. No.: (312) 578-9428

See Case File for Exhibits